It is not our intention to go into sealed proceedings. However, if the lines of argument and questioning cause either of you to think that that's necessary, please do let us know. Furthermore, if either of you think that the lines of argument and questioning should lead to you needing to respond not only in a sealed way, but also ex parte, you have the choice of letting us know at that time or simply waiting and filing something later, and we will deal with it at that time. Yes, Your Honor. Good morning, members of the court. Michael Temposki on behalf of the defendant, David Wright. It's my intention today to address two of the arguments that we raised in our brief, both having to do with the judge's handling of the jury during the course of the trial. The first is an issue that arose towards the end of the trial where one of the jurors over the weekend paid the restaurant bill of the lead case agent and government witness. This was an issue that demonstrated the jurors clear bias on behalf of the government. And this is something that the court was required to forcefully address to ensure that no other members of the jury had been told of this event and had their judgment affected by this jurors clear demonstration of bias. Instead, what the court did was question only the juror who had engaged in misconduct, who had no intention, if he had not been confronted, of revealing that fact to the court, and take that juror at his word that although he had discussed his encounter in some respects with the agent with other jurors, he had not disclosed the fact that he had paid for that agent's bill. Taking the juror at his word under these circumstances was clear error. And instead, what the court should have done is conducted an inquiry with the other jurors to determine whether or not any of those jurors had in fact discussed the paying of the bill with the juror who had done so. And because the court failed to do that, this court can't say with any certainty that the defendant's right to an impartial jury was protected. And so I go through in my brief several cases in which the court has reversed trial judges who failed to conduct a sufficient inquiry into juror misconduct. And one of the cases that I cite is the Gaston Brito case, which I think is analogous to the situation here. In Gaston Brito... I think you can assume the panel is probably familiar. Absolutely. So it's similar because there was no direct evidence that the jury had seen the sort of extraneous influence, which was in that case a hand gesture by the lead agent pointing towards the defendant's table. So there was no evidence there that the jury had seen it. And the court, faced with the fact that there was no evidence the jury had seen it, declined to inquire of any of the jurors whether they had in fact seen it. This court said that was wrong, that faced with a possible taint-producing event, that the court under those circumstances was required to determine, even without any affirmative evidence that the jury had seen it, required to determine whether in fact the jurors had seen the taint-producing event, the extraneous influence. And so too here, where the court, faced with the possibility that members of the jury had been exposed to one juror's clear demonstrated bias in favor of the government, should not simply have taken that juror at his word that he did not discuss it. So I wonder if you might move to the jury instruction. Absolutely. Thank you. Sure. So the second issue that I want to address is the instruction on count four, which was the charge of conspiracy to commit an act of terrorism or conspiracy to kill, involving conduct transcending national boundaries. I'm going to try to get that phrase out without jumbling it a few times. So the issue there, it was really, for the district court, I would suggest, one of first impression. And also for this court as well. I was not able to find a single reported case that addressed how the court should be instructing the jury where this is the charge at issue. This court, therefore, really has an important task ahead of it, which is to set clear guidelines going forward for district judges who may be faced with a charge of a conspiracy to kill transcending national boundaries. And the district court's instruction here did not pass muster. So it's a complicated sort of framework because it's charged as a conspiracy and not simply a substantive act of killing transcending national boundaries. But what the defense requested and what the defense proposed in objection after the judge had given his instruction was that essentially there were two substantive elements to the offense. One is that there be a killing. And the second is that the killing involve conduct transcending national boundaries. Now because this was charged as a conspiracy, the defense argued below, and we argue here, that the defendant had to specifically intend that there would be a killing. And specifically intend that the killing would involve conduct transcending national boundaries. The specific intent that the objective of the conspiracy take place. That was not communicated to the jury in any respect. Instead, the court essentially glommed the two substantive acts together as one and then muddled it with an attempt to explain further what the elements of the offense were. The effect of that was that the jury, as instructed, could have found the defendant guilty simply by proof that he conspired to kill. Without any proof that he specifically intended that the killing involve conduct transcending national boundaries. And so with the way the court instructed, the court relieved the government of its burden to prove an essential element of the offense. So what was the court's instruction? Well the first line, the court's attempting to set out what the specific intent requirement is with regards to this count, count four. And it says the specific intent is to commit an act of terrorism transcending national boundaries. That is not a straightforward explanation to the jury of exactly what the defendant's intent has to be. Before you go further, you can argue the case however you would like. And certainly if my colleagues want to pursue this more, that's fine with me. I thought that this was largely a purely legal issue. It's going to rise or fall on whether it's a jurisdictional element or not. I'm using that phrase colloquially. But the other part of the instruction with respect to coordination, I do think that's got some bite. Were you prepared to argue that? I certainly can argue it. Is there a specific question that you would like me to address? Well let's hear yours. Certainly. So on that count, which was count one, the material support counts, the court was attempting to define what it meant to coordinate with a terrorist organization, in this case ISIS. And so what the court essentially did was say that acting in accordance with the strategy and tactics, the publicly available, publicly processed, widely disseminated strategy and tactics of a terrorist organization was coordination. It didn't say accordance. It said coordination with. It was coordination. I'm sorry. You said the court said acting in accordance with the strategy. Is that what it said? I thought it said acting in coordination with the strategy and tactics. I will get the specific text of the instruction. But the gravamen of the instruction was that coordinating with, okay, they have to be, the conspiracy has got to be cognizant of and acting in coordination. It doesn't have to be direct orders, but in coordination with the strategy, the tactics of the foreign terrorist organization, in this case ISIS. Those are the exact words. And there's a prior statement that leads into all that, which I take it you don't object to. You take that as a correct statement of the law. And what statement are you referring to, Your Honor? In the jury instruction by the judge. In that same passage on this same count, didn't the judge instruct the jury correctly that you would have to find that they acted at the direction of the terrorist organization or in coordination with the terrorist organization? Certainly, if the jury found they acted, that's not what I asked. Didn't the judge instruct that? Didn't the judge use that statement before it came to the description of what coordination means? I believe that's correct, Your Honor, yes. Okay, so given that we're supposed to view the jury instructions as a whole, given that the top line statement of the elements of the offense is, on your view, a correct statement. In other words, a statement by the judge that the jury could convict by finding that the defendant acted in coordination with the terrorist organization. There's no problem with that. At the direction of? No, at the direction of or coordination with the terrorist organization. My problem is with the way that coordination was defined. That's my problem. I understand that, but the sheer statement that you can be guilty if you are found to have acted in coordination with the terrorist organization, you have no problem with that statement. That standing alone is legally correct. Okay, great. So then there is a discussion of what coordination means. Correct. We're supposed to view the instructions in their totality. You are. So my question is, when they then are describing what counts as coordination, should I read that as a stand-alone statement that displaces the first statement, which said you have to coordinate with the terrorist organization? Or should I read it as supplemental to that statement? So you have to coordinate with the terrorist organization. What does coordination mean? It means you could be coordinating with the strategies and tactics of the terrorist organization. One way to put those two together would be coordinating with the terrorist organization. You have to be doing that. But you can be doing it by just coordinating with the strategy and tactics rather than at the expressed direction of it. You want us to read it as if what it's saying is a stand-alone statement. All you have to do is coordinate with the strategy and tactics. There's not going to be any evidence that you were coordinating with the terrorist organization itself. Correct? That is what I think the jury would take from that. Okay, so why should we read it in that light? I mean, just help me with the text of it. Why would I put the two statements together? I can't look at just the second one standing alone. I have to view it in the totality of the instruction on the counter. Because I think the term direction, I think, is straightforward to the average juror. Everyone knows what it means to be directed to do something. Coordination, this is a term that the courts have struggled with and the Supreme Court ended up having to weigh in on a related issue. This is not a term that is necessarily given its everyday meaning and that the jurors would necessarily understand sort of reflexively what they would have to find to find coordination. So the court's explanation of what coordination actually means would be taken by the jury as this is enough and this is what coordination is. It's at this base level, which simply means coordinating with the strategy and tactics.  Understanding that there could be other means of coordinating, I don't think the jury would take it as that. They would take that instruction to mean this is what coordination is. It is coordinating with the strategy and tactics of the organization. So on the preserved objection on that point, the judge, I'm paraphrasing, but I think the judge said something to the effect of actually I've increased the burden because I've sort of limited the government to proof of actual coordination with respect to those two things. And again, as Judge Barron has asked, we have to sort of figure out, well, would the jury have understood that that's what the judge intended to do, thought he was doing, and did do? And so my question then is the government in closing does make a point of that. Can we consider that? Do we consider the totality of everything that the jury had, or should we stop at, you know, a jury could be confused about this because this instruction taken in isolation is not correct. It's too broad. And even if we put it in the context of the previous instruction, we still think the jury could have been confused. But can we consider what the government said in closing, how the case actually went in? I think you can consider what the government said in closing as it relates to prejudice, as to whether the instruction prejudiced the defendant. But the government's strategy, for lack of a better word, at trial, was to suggest that because the defendant read all these materials and acted in accordance with the teachings within those materials, that that was the coordination, coordinating with the strategy in practice. Just on the point about prejudice that you mentioned, is your claim that the instruction amounts to a due process violation, so that the prejudice inquiry is, they have to show as harmless beyond a reasonable doubt, or are you making a challenge to the wording of the instruction so that it would be, I think it's an abuse of discretion and then the burden of prejudice is on you. Is that right? Well, so I'm arguing that the instruction relieved the government of its burden and therefore the question is whether it's harmless beyond a reasonable doubt. The alternative would be if the court disagrees with that, I'm arguing that it was also an abuse of discretion because it was erroneous and then it prejudiced the defendant because that was the government's position at trial, that he coordinated with the strategy in practice. He kind of adheres to an element so that if it's confusing then it would be a constitutional violation. Exactly right. So the prejudice analysis then would be they'd have to show it was harmless beyond a reasonable doubt. That's our position, yes. If there are no further questions, I will... Can I ask you one question about the emergency provision challenge? Yeah. I don't know whether you used the word or whether the government used the word describing your challenge as a facial challenge. I believe the government used that phrase. I didn't use that phrase. I can see why you wouldn't use that phrase. So one reason not to use the phrase is because you mean to bring it as applied challenge, as applied challenge, right? So are you bringing it as applied challenge? Because one thing that normally leaps out when people make an as applied challenge is they identify some fact about their particular case that the challenge applies to. But you don't do that. Hard to do here because of the nature of the FISA information and what we were provided. Did you have an option to get counsel who was cleared to see the information? That was not a realistic option for us, Your Honor, no. So we were operating somewhat in the dark, and so the challenge was simply to the provision in the statute itself should not have been applied to the defendant because the statute itself was unconstitutional. But at a minimum, wouldn't there have to be for you to get a claim going some violation of a Fourth Amendment right of your client? So some conversation he participated in would have had to have been listened to. That's right. But he would know what conversations he had. But he wouldn't know if they were captured. Right, but he would at least be able to identify one of them that if it was captured he would have thought would have been inappropriate to capture. But you don't even know if it was captured pursuant to a FISA warrant or pursuant to the emergency, doctor. It wouldn't matter. For you to win, there's got to be at least one conversation of your client that if captured would constitute a Fourth Amendment violation, right? Well, there were several conversations that were captured. We don't know what the authority was for it. Okay, and I'm sorry if I don't understand your question. Then why is the capturing of those conversations an as-applied basis for challenging the statute? In other words, is your claim based on the conversations that are referenced in your brief? And your position is if it was one of those conversations, there would be a Fourth Amendment violation? No. Okay, let me clarify. So our position is that under no circumstances should anyone's conversations be captured pursuant to the emergency authorization of FISA as the statute has written. And that would include the defendants. That sounds facial. So do you also have an applied, as-applied? I think it's the question that… It's a problem because we're operating somewhat in the dark as to what the statements were that might have triggered the emergency authorization. It's fine to say no. You're not going into the as-applied challenge. Saying you're in the dark, I don't follow that. Is that saying no, we're not, because we're in the dark? Yes. Okay. But you're not totally in the dark. Well, we're in the dark as to under what authority the statements were intercepted, was it pursuant to a warrant or pursuant to the emergency application. Okay, but I think you know, you said earlier, you know at least two statements that you've been put on notice were gathered pursuant to the surveillance. But it could have been a warrant. We don't know. Okay. So because of that, perhaps assume that… That it was emergency authorization. Yeah, can you present an argument that way? If the statements that have been readily digested and disclosed were captured, the question is what statement triggered the emergency authorization, and that's what we don't know. It's not what was intercepted during the emergency authorization. The question is why did they get it in the first place. You don't seem to be arguing. I understand the difficulty one might have if it was used on to that point. But there is a range of conversations the government has alerted you were used. Some of those would be sufficient to trigger the emergency authorization as written. Some of them would. But you haven't identified any that wouldn't be. Even of the known conversations, that's what I'm asking about. Is that right? Of the known conversations that were disclosed to us, the ones that were disclosed were the ones that were the most unhelpful, yes, to the defendant. But you're saying those are the ones gathered during the surveillance. What you would want to know is what was the information that the government had before the surveillance. Correct. And you're saying on that you're totally in the dark. Totally in the dark as to why they began to intercept. Once they intercepted, they intercepted things that arguably would have justified emergency authorization. And just so I understand, this is going to sound fanciful, but presumably during the period of time in which if they were using an emergency order, they would have been using it, your client had a conversation with another human being. Correct? Yes. So just to make it trivial, I assume you could have said, well, during this period of time, my client spoke to someone about going to lunch. Yes. And I think that was the period of time when they may have been using an emergency order. And if they used an emergency order for that basis, it would be unconstitutional. If you put that forward, that would be an as-applied challenge. What would we do with that? How would one evaluate that? The reason I'm asking is I'm trying to understand what it means when the government says, the problem with your claim is it's a facial challenge. I'm trying to understand what else, what's the as-applied version of it look like? How would one meaningfully engage with it? The as-applied version would be basically that the emergency authorization is in and of itself fine, and the statute is fine, but in this case, the government's rationale doesn't hold up to scrutiny. How is a defendant ever supposed to be able to make that argument? That is exactly right. It is virtually impossible because we have no idea why they invoked it. Isn't Congress's answer here is that you're right, you don't get to do it, but instead they provided for an ex parte as-applied review by the district court, which the district court engaged in? I don't know if they did. I don't know. I don't know if the government was obligated to tell the court why they invoked emergency authorization or not. I simply don't know. But doesn't the statute provide for an ex parte review by the court? Yes. Yes, there is a review based on issues that are raised. And so if you have any hope of an as-applied, it would have to be in that arena in which you have no participation. Correct. And you say that itself is unconstitutional. I say that the unavailability of any adversarial process is in and of itself unconstitutional, yes. But if you happen to be in possession of facts known from your client or clients that would put the lie to or put the test to the government's emergency determination, you still have the opportunity for a bivens action, right? Not necessarily in your case, but theoretically. If someone were intercepted unlawfully, could that person bring a bivens action? I suppose they could, but how would they prove it was unlawful? That was the premise of my question, that if you were in possession of facts that put the lie to the government's emergency determination. It's not like it's entirely out of the realm of possibility. There are some cases where it probably would not permit you to go forward. But you certainly could. It's a case of total mistaken identity. Yes, and that extreme situation where the plaintiff in that case could establish that under no circumstances had he ever done anything. You're prohibited from bringing a bivens action that you know of. I honestly have not researched that particular issue. I'm just trying to get at whether the only possible way that this can be reviewed is in an ex parte proceeding in the criminal action. I'm trying to understand whether there are other potential options. I think we still have the same issue, which is only one-sided. If you had information that would put the lie to it, you could bring that in the suppression hearing, just as we would have to wait for bivens. The problem is, in the case in which one doesn't have the information that would put the lie to it, there's no way to challenge it. Even if the government has done it, that's the problem that you're objecting to. The only way you can challenge it there is to make a facial challenge. If you have information that would lead one reasonably to suspect that there was this surveillance that you object to. You might possess that information, but a person who possesses that much information has no capacity to challenge it on the ground that it's not a constitutionally exigent circumstance that would justify doing it without a warrant first. There's just no way that ever can be done. It is. I'm hard-pressed to think of how it would proceed adversarially. Yes, correct. Any further questions? Thank you. Your Honors, may it please the Court, Randall Crum on behalf of the government. Starting with the last question, because Your Honors are interested in it. I think what I would agree with is the way Judge Kayada framed it, which is that, yes, the way the statute is set up, the ability to make an as-applied challenge is basically committed to the non-adversarial process, to the ex parte process. And that's what the judge is supposed to do, is just to look at the particular authorities, whatever they may be, in a given case and find out whether the statute was properly – the authorities of FISA were properly applied. When you say committed, do you mean limited to? That's it? That's the only way? Well, Your Honor raised a question which I had not thought of, which is, are there any circumstances in which information might come to light in some fashion that could be brought out of that? Part of it could be brought out of the process. I have to say, I don't know what the answer would be. I would say, in the ordinary course, what the statute conceives of. Yeah, but what I have in mind is the case where emergency is determined and the FISA Court never hears about it. Well, again, the review is – my understanding is the FISA Court's review – I mean, never at any point? Yes. So how do you get judicial review of that illegal and possibly unconstitutional action? Well, presumably, the order would still have to be issued, and the order would still have to come to the district court. No, if they don't do it. If the Attorney General doesn't do it, it just goes around. I'm not sure. I mean, it's hard to know. If they entirely ignore the statutory process, that would – I mean, it's hard to know how that would be – how to resolve that. I don't know why you're resisting the Bivens option. No, no, I mean, I think that is an option. I think the Court – the only reason I'm not – there's not one I'd consider, so I don't know if there might be any limitations on it. Your honest point is a good one. If we are in a situation where the process is entirely ignored, the information is nonetheless sought to be used, and it becomes clear that the process was entirely ignored, I would imagine any arguments showing that the process was ignored would be viable arguments. Going back a step, I take it the government thinks there is some exigent circumstance, circumstances like constitutional bounds, that limits the ability of the government, even for foreign intelligence surveillance purposes, to surveil U.S. citizens on U.S. soil without a warrant. We would agree that there is – whether it would be precisely the same, given the recognized sense in which foreign intelligence gathering may prevent a different sentence. To the extent it is entirely U.S. citizen on U.S. soil, presumably constitutional requirements applicable to that would apply. I don't think we point out a lot of the argument here is based on analogies to Title III. It's not a perfect analogy. And even there, it's not – You have not made an argument to us that there are no constitutional boundaries as to the circumstances under which you can engage in emergency FISA surveillance of a U.S. citizen on U.S. soil without a warrant. Certainly not. Instead, as I read it, you said that the boundaries are at least as broad as the second category of the Title III emergency exception. Right. Not making any argument that insofar as conduct here exceeded those boundaries, it was also constitutional if done without a warrant. Right. And again, we responded to the argument made, which was based on that analogy. Okay, so then that's step one. Step two is, you seem to concede there's no way a defendant who has reason to believe that they were subject to an emergency warrant that exceeded those boundaries can get judicial review of that question, other than through the ex parte review process. Correct. Okay, and then the third proposition is, that's constitutional. Correct. On the third proposition, what precedent am I supposed to look at to support that? So, there's Title III cases, but the problem is the Title III cases aren't ex parte. So, there's a bunch of Title III cases on the emergency thing. They evaluate, was this circumstance met or not? Was it a constitutionally exigent circumstance or not? Some say yes, some say no. But they don't say, you can do that ex parte. But judicial authority is pre-review. I look at Keith. Right. Where am I? I don't see anything in Keith that tells me this type of process was blessed in Keith. Right. So, now you're saying that we should bless it. What is the precedent that I rely on to bless it? Well, on the point that the ex parte process is sufficient, I mean, there's a number of cases we cite in our brief from other circuits. But, I mean, every circuit to address the issue has found that it is constitutional. Rely on Supreme Court cases saying that an adversarial process in this context is not required for probable cause determinations, also cited in our brief. So, I mean, that's the precedent, is that an adversarial process is not required. And, again, upheld by every court of appeals to address the issue, and as being an appropriate balance. No, but those are not, when they say non-adversarial process, that's when a judge issues a warrant. No, no, I mean, these are. What are cases that say you don't need a judicial warrant to begin with, and then when we post-talk want to look at whether it was okay, a non-adversarial process is enough. Is there a case that says that? Well, I mean, one point is, again, I believe that the, I mean, again, if the issue is the ex parte nature of it, I believe that that is covered by other cases. But your suggestion is that on the specific question here, with respect to the emergency authorization, that that somehow calls for a non-adversarial process when the rest of it does not, when the other review is satisfactorily conducted ex parte. I'm just not sure I understand the distinction you're drawing. A non-adversarial ex ante process, before the surveillance, has been blessed. You want us to say that ex post non-adversarial process can bless a unilateral executive branch action to surveil. That is what I'm trying to find, whether there's precedent for that. Well, the reason there's not an answer to that is the question about the specific executive authority as a separate basis for constitutional discretion has not been raised. So you're now asking us to bless that, and I would like to know why I should feel comfortable doing that. Well, I mean, for a lot of the reasons we set forth, I mean, one thing I just want to say, because it's important, while we address the issues presented, a lot of this does go to the question of we believe the only sort of viable challenge here is the as applied one, which was what you have the same documents the district court did. You can review those. We believe in answering the questions posed, we're not suggesting, and we can't, that in this setting that a particular authority was used or used in a particular way. So I'm responding to your question without saying anything about this case. Isn't the answer that right now under our laws that exist, you're defending the only scenario in which there's never any opportunity for non-ex parte after the fact challenge to the government's claim of right to search? Well, I guess, I mean, every FISA case is ultimately, this is what I think Judge Barron said. Let me put it this way. Can you cite any other instance in which there is no and will never be any non-ex parte opportunity to challenge the government's assertion of a right to search? Well, there is, again, I think it's more to recognize how the process, in fact, works, which is that there is, in fact, the application is itself reviewed. What we're talking about is the period of time between when the emergency authority is asserted and when the FISA court reviews it. If FISA court will review it, FISA court turns it down, the evidence can virtually never be used. So we're talking about, and in fact, there's great disincentives to applying for it when it will not be. When the FISA court does that review, do they review whether the emergency condition was, in fact, an emergency? In other words, if you seek an application based on evidence obtained during the emergency period, does the FISA court assess whether the evidence obtained during that period was obtained during a period in which there really was an emergency? It's not, I mean, I don't think our position as a statute doesn't require that it necessarily assesses the specific, the reason assertion of an emergency. You're not saying to us that the FISA court does do that review. Right. You're saying that you win even if it doesn't. Right. It's readily apparent, usually, whether an emergency exists. The basis for seeking surveillance in a general matter is reviewed. And again, there's a lot of circumstances that prevent it from being sought frequently, and those include the limited number of people who can seek it, and particularly the disincentive posed by the fact that the target has to be told if you seek emergency authorization and it's declined. The government's view is this is a reasonable, the way that it was described in the list of history, is that for this brief period of time, the attorney general is put in the place of the court to make that determination during the emergency period, with the view that if they're wrong about it, they've chosen to assert the authority at a time when no warrant was legitimately, could be supported by probable cause, then there's going to be significant consequences in that they would not do so regularly. But that is certainly the case, the legislative history speaks of the attorney general taking the role of the court for that brief period. And that's what we're relying on. What are the consequences? Well, the consequences, most significantly, is that if it is turned down, then the target has to be told that they were a target of surveillance, which otherwise never happens under the FISA process. Unless you are actually brought to trial and it's tried to be introduced, you would not ever know that you've been a target. That's obviously very sensitive information, and it provides the strongest incentive. The other ones are that there's a very small number of people, three people, four people, who can authorize this, very different from Title III where any deputized law enforcement officer can. You have to convince them that this is a circumstance that warrants this kind of authority. And yet another one is that it has to be reported to Congress, including the number sought and the number denied, with the view that if there was a problem that Congress perceived in the way that it was being used, they would have an opportunity to change the parameters or cut it back. There's no record keeping on emergencies declared but the FISA court not notified, I take it, because the assumption is, since the statute requires FISC to be notified or a judge to be notified, that it will always happen. I mean, that's my assumption. I'm not aware of information to the contrary, but I don't think, I don't know. So hypothetically, how would one get judicial review if that did happen? I can circle all the way back to the beginning here. Well, presumably, I can't begin, I can't be sure. I would imagine that a review in district court, seeing that a procedural component of the process had not been followed, might have a concern with that. There's a different question about whether the decision to choose an emergency was reviewable, is whether the procedural requirements were followed. Typically, procedural requirements are reviewed by the district court judge. I mean, the certifications and everything that's supposed to happen are reviewed to make sure that they did. Well, if they get one of these warrants and then don't go to the FISA court, isn't the individual told that there was the surveillance? Well, if there was, so again, if this was a certain, what we'd be talking about, I don't, it's a little hard to imagine the hypothetical that this would happen. If the argument is, if they didn't go to the FISA court ever, there would not be a denial, and then the provisions triggering notification wouldn't happen. So if the hypothetical is truly the process was bypassed in its entirety, I don't know what would happen. Again, because the requirement is that if it's denied, then you have to know about it. I'm just trying to figure out what a defendant in this situation could do. Let's imagine the emergency, right, a case in which the emergency authorization was used, but the defendant doesn't know that, but the defendant has reason, maybe through circumstances that happened here, to think, you know, let me give it a shot and make an argument that it was used, okay, because the government says that it was a FISA order, and then the government describes the FISA process including reference to the emergency order. So the defendant says, okay, well, if you're going to say that's the process, I'll take a flyer and say you must have used that emergency process to do some of the surveillance. How can they then get a challenge that's going to be meaningful? If they bring a facial challenge, the government says, well, I can pilot a circumstance in which it would be permissible, so you lose, okay. So he wants to avoid that situation. If he simply says, look, I had lots of conversations during this period of time with some of the people that they reference, and some of those conversations were not of a type that would put anyone's life imminently at risk. At most they would be conversations with a person who would be seen as conspiring with me, and there is no indication that I can think of that they would have known I was having any particular conversations that would have been particularly important, okay. Therefore, I want any evidence of that type of conversation excluded. That would count as an as-applied challenge? Right. Is that right? Again, I think the adversarial process, the as-applied challenges are really, I mean, you could make those arguments, and certainly... If he did do that in his brief, would we then be obliged to go through, in a case in which there was an emergency authorization used, to go through the record and see, well, were there any of those conversations with any of the people he named that were of that type that were used? I mean, yes, but the point he raises is that you don't know which conversations... He's just taking a guess. He's taking a guess, and if he gets lucky and you actually used one of those conversations that turned out to be material, then he'd say, well, you got a surprise. Is that how it's supposed to work? Well, I mean, again, I think in general the process is the as-applied challenges are committed to the non-adversarial process. I mean, that's what district courts are supposed to be doing, is to looking at how it was applied in a given case. But you're saying in this case we don't even get there because he didn't make that kind of argument. And I want to point out that, again, that point there was I realize he has limited information, but he did not say, and could have, please review the district court's determination that it was met in this case as well as my facial challenges. And that was something he could have said. You know, it was very clear that he was limiting himself to the broader arguments rather than the as-applied one. You know, the district court has all the information, can review both. But that was not the way he framed his argument, and we responded to it as framed. Thank you. On the jury instruction issue, does the government agree that if the jury was simply instructed that coordinating with the strategy of ISIS, the strategy of the tactics of ISIS was a violation, that satisfied the statute, that we'd have a problem here? I think it would be confusing. I think that in context, I think the earlier language that it has to be in coordination with the organization or on behalf of the organization sort of cures the confusion because I do believe that it's best read in context of that. But I think it's not clear that that's a problem. And, again, we're looking at the whole, so that's our primary argument. But coordinating with strategy and tactics, the defense counsel would like to read into it the idea that the publicly available strategy and tactics, which is trying to sort of import a much broader meaning to it, that the jury would necessarily have heard it as coordination strategy with everything you've read about ISIS in published materials. That's not what the judge said. He tried to define what coordination was, not direct orders necessarily, but coordination with strategy and tactics. Well, suppose I just watched a video on the dark web, whatever that means, and I watched some ISIS video and it says how they like to do things. And then I say, gee, that's inspiring, and I do that thing. That would seem to be coordinating with the tactics and strategy, but that wouldn't constitute coordinating with the organization, would it? And that's not a mistake that the jury could make here, because there was preparatory comments by the judge that said just viewing videos, sending videos around are not criminal, that those are criminal. Well, he said viewing videos are not, but Dr. Barron's question goes beyond viewing them. He says the person then decides, I see the way they're doing it, they're going to do it, so I'm going to coordinate my strategy with theirs. This instruction would seem to say that satisfies the element for this crime. But, again, I think taken in isolation, the question is a much closer one, because it's hard to know. It doesn't mean coordinating with an organization at the level of strategy and tactics, which would be covered, or just coordinating with strategy and tactics. I mean, to my mind, the word coordinating itself suggests interaction, and that's what sort of the meaning of holder is. So when you say coordinating with strategy and tactics, it does not sound to me like following or simply observing and modeling. The coordinating does to me suggest something more and closer to the line and more questionably whether it actually falls outside of holder's definition. But I do want to point out, it's an update, but I just think it's worth putting out in the question of the harm of this error, is that our focus was at the direction of. Our argument was the facts here, which included direct communication with an ISIS recruiter, included following a fatwa directly after pledging allegiance to the leader of ISIS and saying we are doing this to continue.  Certainly, certainly. So if we were doing a harmless beyond a reasonable doubt, it's a bit much to say that it's harmless beyond a reasonable doubt because there's evidence of direction based on the testimony of one cooperator. Well, I would say that it was the thrust of the argument, and one could say that the jury, it was the only thing they were arguing, they clearly credited beyond a reasonable doubt. The only thing of the thrust. No, no, that was the focus of our argument. Focus or the sole thing you argued? I believe in arguing for this element, we argued that it was on behalf of and not in coordination. That's why it's important to us. But I don't think that this is beyond the reasonable doubt question, and I think that's because it does go to wording and phrasing. That's partly because of the several possible meanings of coordinating with strategy and tactics in the broader context. It seemed the competing narratives at trial were the government's ISIS directed narrative, particularly focusing on the fatwa, and the defendant's ISIS inspired narrative, which doesn't get the defendant off the hook for his acts, but for this particular statutory offense, those competing narratives are on either side of the line. And if those are the competing narratives, to then throw in an instruction that's in none of the case law that then says coordinating with the strategy and tactics, isn't there a real risk that that tips things? Well, again, I don't think so. I think in this case, measuring it against a case like Mahana, where there was just discussions to join a group, they travel overseas and there's nobody there, and they give up. This was a lot more, the coordination or the direction was much stronger evidence here. But actually now you've moved from the, is it error or not, to the harm. But I'm focusing on whether the jury instruction was error. Right. And again, I'm not, I don't think we can see that it was necessarily error viewed in the instruction as a whole. Again, if they said, the judge says first, presumably they take that seriously, you have to coordinate or act on behalf of the terrorist organization. And that's clearly a correct statement of law. And then it says not direct orders, but coordination with strategy and tactics. Reading those two together, the assumption is you're coordinating with the organization as to strategy and tactics. That's a reading that I think the jury would have heard. And again, I also don't think that that's clearly wrong. I think that, viewed that way, and coordination strategy, and also what I said before, that coordination itself implies a measure of connection, rather than simply following a book you read. Our case law does make this distinction between wording and phrasing versus omitting an element. But sometimes when we talk about whether or not it's an element, we're supposed to decide that by looking at the wording and phrasing to see whether it omitted it. Yes. Well, I mean, in this case, it matters quite a lot because the standard of view is different, the prejudice inquiry is different. So here, if there's a wording and phrasing problem, the reason it's a problem is because the results of the confusing wording would be to relieve the government of the burden of proving an element. So why should we treat that as just a wording or phrasing problem? Well, again, I don't think that's a— to suggest that by saying that it so took away from what the judge had said before, that the whole concept of coordination dropped out, because omitting an element just means the element wasn't put to the jury at all. What we're talking about here is that the only argument that was preserved, for that matter, was not they didn't instruct on this element, but that they, in some sense, watered down the burden of proof that the coordination strategy and tactics somehow, because of the very points that the judge, Your Honors, made, took something away from the need to show coordination with the organization itself. And again, we disagree on whether that—I would disagree that that occurred, but that, to me, is not an omitted element situation. It's a question about whether the element's meaning was altered in some way that was less strong than is reflected in the case law, particularly Holder, as to what coordination means. And it's worth pointing out on this that Holder points out that the exceptions to coordination are relatively narrow. Near membership or near association is not enough. But you don't have to show a specific intent to further the activities. You just have to provide one of the services that are described in the statute, or you have to provide yourself as personnel. And the only thing that gets you out of that is if you were acting entirely independently. And there was simply no suggestion here. I don't think this is a case where the judge's instruction, or however it may have been imperfect, went down a path that took us out of what is permissible within Holder's definition of what is coordination. All right. The first question fell out in the brief. Thank you both.